SMYTH *et al. v.* MACK.

(*Supreme Court, General Term, First Department.* June 3, 1892.)

1. BROKERS—COMMISSIONS—BENEFIT OF SERVICES.

Plaintiffs, as brokers, sold property for S. to C., and defendant was employed to draw the contract of sale, which, finding that S. had failed, he postponed. Later defendant, though without any title, contracted with C. to sell him the property, and C. paid him $500, which was handed to S.'s assignee. The title was afterwards vested in defendant by several deeds from S., his assignee, and other parties, and defendant made conveyances thereof as requested by C. He had at no time any personal interest in the property, and acted solely as an agent for C. for purposes of transfer, nor did he employ plaintiffs, nor agree to pay them a commission. *Held*, that defendant did not profit by plaintiffs' services, and was not liable for the commission due them by reason of their original sale to C.

2. STATUTE OF FRAUDS—DEBT OF ANOTHER.

Before the vesting of the title in himself, defendant told one of the plaintiffs that the matter would go through; that he was the owner of the property, and would make the contract himself, and, if plaintiffs were anxious, he would then pay them half of the commission in lieu of the whole when the contract was closed. *Held*, that this was either a parol promise to pay another's debt or an original promise without consideration, and therefore void.

Appeal from circuit court, New York county.

Action by Philip A. Smyth and others against Hugo S. Mack for brokerage. From a judgment for plaintiffs, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Henry M. Heymann,* (*Louis Marshall,* of counsel,) for appellant. *Hays & Greenbaum,* (*Samuel Greenbaum,* of counsel,) for respondents.

BARRETT, J. This action is for brokerage on the sale of a piece of real estate in this city. The defendant did not employ the plaintiffs, and their claim rests upon the contention that he benefited by their services. The property in question was owned by one Solomon. Upon his employment the plaintiffs, in October, 1889, procured a purchaser therefor, named Canavan. Canavan paid Solomon $75 on account, and the defendant, who is a lawyer, was sent for by Solomon to draw the contract. The defendant, finding that

Solomon had failed, and made an assignment for the benefit of creditors, postponed the making of a written contract. Some two months later, namely, on the 13th of December, 1889, Mack himself signed a contract with Canavan for the sale of the property. At this time Mack had not taken the title, and it was provided in the contract that he was to incur no liability in case he failed to deliver a good and sufficient deed. Canavan paid Mack $500 upon the signing of this contract, which sum Mack turned over to Solomon's assignee. Mack had no real interest in the property, and he signed the contract in question as a convenient means of carrying out the original agreement made verbally between Solomon and Canavan. The title was afterwards vested in Mack by several deeds,—one executed by Solomon and his late partner, Adler, another by the assignee of Solomon & Adler; and a third by Solomon, as sole surviving executor of Moritz Solomon, deceased. Subsequently Mack conveyed the property to one Auerbach as collateral security for a note; and still later, under the instructions of his client,—who was Solomon,—he completely divested himself of the title, by giving a deed to one Bohm. It seems that no deed was given to Canavan in execution either of the verbal agreement with Solomon or the written agreement with Mack. It is clear that the plaintiffs' right of action against Solomon was complete when they procured a purchaser who was ready and willing to pay Solomon's price. That cause of action still exists, and has never been waived, canceled, or satisfied. It is equally clear that this cause of action is the only one which has accrued to the plaintiffs, and that they have no additional claim against the defendant. Indeed, it is difficult to perceive upon what principle the defendant has been held for this brokerage. He never employed the plaintiffs, and the learned trial judge expressly refused to submit to the jury the question whether he made an independent agreement to pay the commission. The defendant attempted to prove that he never profited by the plaintiffs' services; but all evidence tending to show that he had no personal interest in the transaction, that he acted as a mere vehicle for the transfer of title, and that he neither paid nor received a consideration thereon, was ruled out. It is true that one of the plaintiffs (Ryan) testified that some time after the discovery of Solomon's financial condition, the defendant told him not to worry; that the matter would surely go through; that he, defendant, was the owner of the property then, and would make the contract himself; and that, if the plaintiffs were anxious, he would then pay them half the commission in lieu of the whole commission when the contract was closed. At the time when the defendant is said to have made these statements he was not in fact the owner of the property, nor, as already observed, was he the owner when he signed the contract with the purchaser, Canavan, on the 13th of December, 1889. Two of the deeds, formally vesting the title in him, were dated the 30th of December, 1889, and the third was dated the 31st of December, 1889. They were all recorded on the 10th day of January, 1890, the same day when the deed to Auerbach was recorded. The promise testified to by Ryan was either a promise to pay Solomon's debt, and therefore void under the statute of frauds, or it was an original agreement void for want of consideration moving between the parties to it. Such original agreement was not in consideration of services rendered or to be rendered to the defendant, nor was it in consideration of services of which he intended to avail himself for his own personal benefit. When the defendant spoke as Ryan would have us believe he did, he was acting simply as Solomon's attorney, and was speaking for his client. He had no possible interest in the property, nor had he even a contract for the vesting in him of the formal title. He could not have known, either then or when he signed the contract of December 13, 1889, that the arrangements which were pending to unite in him, for the mere purposes of transfer, the interests of the executor, the assignee, and the partners, would go through. He simply was willing to have all these inter-

ests united in him, so that he could execute, in his clients' interest, a valid deed to the original purchaser, or to any other person, upon his clients' instructions. Plainly he assumed no personal liability to the plaintiffs, nor was he legally bound, by the formal instrument which passed, or by the offer which was testified to by Ryan, to pay the commission which was earned by the plaintiffs, and became due to them by Solomon when the purchaser was originally found. The learned trial judge seems to have put the case to the jury upon the theory that if Ryan's testimony, read in connection with the documentary evidence, was to be credited, the defendant "took the original contract off from Solomon's hands," and assumed all its obligations; in other words, put himself in the place of Solomon precisely as though he, the defendant, had from the beginning been the owner of the property. This, however, was an inaccurate view of the effect of the evidence, taken in its most favorable aspect to the plaintiffs. It entirely overlooked the defendant's professional relation to the case, the absence of any personal interest, and the purely formal character of the conveyances to and by him. Besides, if well founded, it makes the error of rejecting evidence as to the want of consideration, already referred to, more conspicuous. We think, upon the whole, that there was nothing to submit to the jury, and that the complaint should have been dismissed. The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.